1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | No. CR 05-00521-TUC-RCC [CRP] |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| JIMMIE FRANCISCO, | ) | |
| Defendant. | ) | |
| _____ | ) | |

An evidentiary hearing was held to determine Defendant Jimmie Francisco's mental competence to stand trial. Two experts testified at this hearing; Angela Walden Weaver, Ph.D. for the Government, and Barry Morenz, M.D., for the Defendant. Because it appears Defendant's condition has relapsed since his medication was changed after his return from Federal Medical Center-Butner, it is the recommendation of this Court that Defendant be returned to FMC-Butner for further treatment to determine if his competence can be restored.[1]

**FACTUAL BACKGROUND**

On February 16, 2005, Francisco was stopped by Border Patrol agents shortly after driving a 1979 Ford pickup truck from Mexico into the United States through the San Miguel Gate on the Tohono O'odham Indian Nation. A consent search of the truck uncovered four

---

[1]While L.R.Crim. 57.6(d)(8) provides that magistrate judges can "enter orders determining mental competency," after the initial referral to a federal medical center, an order determining competency is potentially dispositive. While the recommended order in this report is not dispositive, a dispositive outcome could have resulted from the evidentiary hearing. Therefore, this Court's ruling is presented as a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B).

1   hundred and seventy one pounds of cocaine hidden within the side panels of the truck.

2   Defendant was arrested and charged with possession with intent to distribute cocaine.  On

3   March 16, 2005, an indictment was issued charging Francisco with two counts, importation

4   and possession with intent to distribute 213 kilograms of cocaine.

5        On April 21, 2005, Defense counsel filed a Motion To Determine Competency of

6   Defendant [Dkt 9].   Mr. Bates reported that Francisco was being treated at CCA for

7   depression, anxiety attacks and seizures, and that he had previously received mental health

8   treatment at the Federal Medical Center in Rochester, Minnesota.  At a hearing on May 6,

9   2005, the Court ordered that Francisco be evaluated by a local mental health provider.  The

10   Court also ordered Francisco to sign a medical release to be delivered to the prosecutor so

11   that the medical records from FMC-Rochester could be recovered.

12        On July 28, 2005, the Court determined Francisco incompetent to stand trial and

13   ordered his commitment to the custody of the Attorney General for one hundred twenty days

14   for treatment to restore competency [Dkt 18].  Defendant was transferred to the Federal

15   Medical Center in Butner, North Carolina, for treatment.

16        On December 19, 2005, Dr. Weaver and Dr. Lucking issued a Forensic Evaluation of

17   Defendant.  The staff at FMC-Butner had the Forensic Psychological Report of Sergio I.

18   Martinez, Ph.D., dated June 30, 2005, and the Psychiatric Evaluation by Dr. Daniel J. Shine,

19   Jr., from FMC-Rochester, dated July 25, 2002.  Defendant had a difficult stay at FMC-

20   Butner. Defendant was non-compliant with anti-depressant medication.  Eventually, he was

21   treated with lamotrigine for complaints of mood instability.  Defendant was determined to

22   have borderline intellectual functioning.  The primary diagnosis was Personality Disorder

23   Not Otherwise Specified.  Dr. Weaver and Dr. Lucking concluded that Mr. Francisco was

24   competent to stand trial.

25        Francisco was transferred back to CCA-Florence.   An evidentiary hearing to

26   determine competence was scheduled.  Defense counsel arranged for Francisco to be re-

27   examined by Dr. Martinez in preparation for the evidentiary hearing.

28        Dr. Martinez was unable to complete the examination on March 3, 2006, because "Mr.

- 2 -

1 Francisco became increasingly frustrated, angry, and upset, while indicating he did not wish

2 to participate in the evaluation." Because of the incomplete examination, Dr. Martinez could

3 not make a definitive conclusion concerning competency. Dr. Martinez did observe that

4 based on the restorative treatment Francisco received at FMC-Butner, that:

5
6
7
8
9

> "...Mr. Francisco is no longer considered to be suffering from
> significant symptoms of depression that would interfere in his
> capacity to participate in the legal proceedings. He is
> considered, however, to continue to exhibit a self-defeating
> attitude along with the above-noted personality traits that could
> undermine his level of participation in his legal proceedings and
> in his ability to relate with his attorney in a factual and rational
> manner."

10 Letter from Dr. Martinez to U.S. Magistrate Judge Pyle, March 7, 2006, p.3.

11 At that time, an evidentiary hearing was set for March 22, 2006, to determine

12 Francisco's competency to stand trial. After receiving Dr. Martinez' March 7, 2006, letter

13 describing the aborted mental examination of Defendant, counsel for Defendant conceded

14 that Francisco was competent to stand trial and that the evidentiary hearing was unnecessary

15 [Dkt 33]. The Court determined Francisco was competent to stand trial and vacated the

16 evidentiary hearing. *Id.*

17 On March 27, 2006, Defendant attempted to enter a plea of guilty pursuant to a written

18 plea agreement [Dkt 34]. Defendant would not admit knowledge of the drugs in the truck

19 he was driving when he was stopped and arrested. The Court refused to accept the plea of

20 guilty because of the lack of a factual basis to support the plea. *Id.*

21 On May 15, 2006, Defendant again attempted to enter a plea of guilty pursuant to the

22 same plea agreement [Dkt 35]. According to Defense counsel, without the plea agreement,

23 Francisco is looking at a Guideline sentencing range of thirty years to life imprisonment.

24 Under the plea agreement, he faces a twenty to twenty-five year sentencing range.

25 At the beginning of the hearing, Defense counsel advised the Court he had previously

26 reviewed the plea agreement with Francisco. However, just that morning, Mr. Bates was

27 informed by his client that he had been held for the past eight days in segregated confinement

28 on suicide watch. Francisco confirmed this information to the Court, explaining he had

swallowed three razor blades in a suicide attempt. The Court questioned Francisco in some detail concerning his competence, but eventually determined to proceed.

At several points during the plea colloquy, the Court, explaining the rights being abrogated and other consequences of the plea to Defendant, had to use more care and proceed at a slower pace than was usual. While questioning Francisco about the facts supporting the indictment, he once again refused to admit knowledge of the two hundred and thirteen kilograms of cocaine hidden in the truck. Defendant admitted driving the truck from Mexico into the United States, and knew he was to leave the truck for others to pick up. When asked if he was to be paid for doing so, Francisco responded that he was to be paid one million and ninety thousand dollars.

Defendant's behavior at the second attempted felony change of plea raised concerns, once again, about his competence to stand trial. Defendant was examined by Dr. Barry Morenz, who issued a forensic evaluation report on August 24, 2006. [Hearing Exhibit D]. Dr. Morenz diagnosed Defendant as follows:

> Axis I - Polysubstance abuse in a controlled environment and malingering;
> Axis II - Personality disorder not otherwise specified with borderline and antisocial features; borderline intellectual functioning.

Dr. Morenz' conclusion that Defendant was malingering related to two issues. First, Francisco reports of constant auditory and visual hallucinations of a vivid and fantastic nature are not a typical symptom of psychosis. Secondly, Francisco's inability to explain the functions of various courtroom personnel was not credible, given his lengthy criminal history and his ability to describe various court functions during his stay at FMC-Butner. [Exhibit D, pp. 5-5]. Therefore, Dr. Morenz concluded that Francisco had a factual understanding of the proceedings against him.

Dr. Morenz went on to conclude that the nature of Defendant's personality disorder was so severe that Francisco could not be expected to be able to consult with his attorney with a reasonable degree of rational understanding. In other words, the evidence of malingering did not relate to the severity of the Axis II diagnosis for Francisco. Thus, Dr.

1   Morenz concluded that Defendant was not competent to stand trial.

2        An evidentiary hearing was conducted.  Angela Walden Weaver, Ph.D., testified for

3   the Government.[2] Dr. Walden Weaver was Francisco's treating psychologist at FMC-Butner.

4   Dr. Walden Weaver has been a staff psychologist at FMC-Butner since 1995.  In those

5   twelve years, she has written more than seven hundred forensic evaluation reports.  Dr.

6   Walden Weaver's diagnosis of Defendant was identical to Dr. Morenz', except that Dr.

7   Walden Weaver did not identify any malingering.  RT, 11/20/06, p.43.  While Francisco's

8   behavior was problematic for the first month of his stay at FMC-Butner, with medication, his

9   behavior became more manageable.  In Dr. Walden-Weaver's opinion, consistent compliance

10  with the medication is necessary to maintain Francisco's competency.  RT, 11/20/06, p.46,

11  49-51.  Unfortunately, the medication protocol that was successful at FMC-Butner was

12  changed shortly after Francisco's arrival back at CCA on January 13, 2006.  At CCA, Dr.

13  Hamadi discontinued the Lamictal and put Francisco first on Elavil, and later on Prozac, two

14  drugs that were administered unsuccessfully to Francisco at FMC-Butner.  RT, 11/20/06,

15  pp.66-71.

16       Because of the change in medications, the suicide attempt and threats at CCA since

17  Francisco's return from Butner, and his uncooperative behavior with Dr. Martinez and Dr.

18  Morenz, Dr. Walden Weaver does not dispute Dr. Morenz' conclusion that Defendant is

19  presently incompetent to stand trial.  However, unlike Dr. Morenz, Dr. Walden Weaver does

20  believe Francisco is restorable.  RT 11/20/06, ll.91-92.

21  **THE LAW**

22       A criminal prosecution that proceeds against an incompetent defendant violates due

23  process.  *Cooper v. Oklahoma*, 517 U.S. 348, 354, 116 S.Ct. 1373, 1376 (1996); *Medina v.*

24  *California*, 505 U.S. 437, 453, 112 S.Ct. 2572, 2581 (1992); *Drope v. Missouri*, 420 U.S.

25  162, 171-172, 95 S.Ct. 896, 903-904 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S.Ct.

26  836, 838 (1966).  The standard for determining competency is well-established:

27             ...whether [defendant] has sufficient present ability to consult

28

---

[2]Reporter's Transcript, November 20, 2006, hereafter "RT 11/20/06."

1   with his lawyer with a reasonable degree of rational
2   understanding – and whether he has a rational as well as factual
    understanding of the proceedings against him.

3   *Dusky v. United States*, 362 U.S. 402, 402 80 S.Ct. 788, 789 (1960)(*per curiam*).  In setting

4   this standard, the Court recognized that a defendant's orientation to time and place and

5   "recollection of some events" would not be sufficient to establish competence.  *Id.*

6        The procedures for determining mental competence are set forth in 18 U.S.C. § 4241,

7   et. seq.  If the court at any time prior to sentencing determines that the defendant is "suffering

8   from a mental disease or defect rendering him mentally incompetent to the extent that he is

9   unable to understand the nature and consequences of the proceedings against him or to assist

10  properly in his defense, "the court shall order him hospitalized in Government custody to

11  determine if competence can be restored.  18 U.S.C. § 4241(d).  The initial hospitalization

12  is for 120 days, but it can be extended if the court determines "a substantial probability that

13  within such additional period of time he can attain the capacity to permit the trial to proceed."

14  18 U.S.C. § 4241(d)(2)(A).  If defendant's competence to stand trial cannot be restored, the

15  defendant may then be subject to civil commitment proceedings under 18 U.S.C. § 4246.  18

16  U.S.C. 4241.

17  **ANALYSIS**

18       This is a challenging case.  Defendant faces very serious charges and potential

19  incarceration for the rest of his life.  Defendant also has a long-standing and very serious

20  mental health history.  Finally, there is the challenge of maintaining continuity of care after

21  Defendant leaves FMC-Butner.

22       When Francisco was discharged from FMC-Butner on January 11, 2006, Dr. Walden

23  Weaver opined that Francisco was competent to stand trial and the symptoms of his

24  psychotic disorder could be managed with the drug protocol instituted at FMC-Butner in

25  October 2005.  Unfortunately, in short order, Dr. Hamidi changed Fransicso's medications,

26  and Francisco's symptoms, anti-social behavior and overall unmanageability reoccurred.

27       On March 3, 2006, Defendant was uncooperative and threatening during an attempted

28  examination by Dr. Martinez, ultimately sabotaging the efforts of his attorney to present

1   evidence to oppose the testimony of the medical experts at FMC-Butner.

2          On March 27, 2006, an attempted Rule 11 change of plea colloquy was conducted.[3]

3   At the beginning of the hearing, Francisco indicated he was on Dilantin and Elavil and felt

4   drowsy and sleepy.  RT. 3/27/06, p.5.  Defense counsel expressed his concerns as follows:

5               My client is a little confused.  He has asked me already after he
                accepts the plea whether or not we can set a speedy trial for him.
6               He is – he does seem confused today.  And, he's asked me a
                number of questions particularly as to what the potential penalty
7               is he's looking at even though I'm aware of having discussed this
                with him many times previously.  And I'm not sure if this is the
8               effects of the drugs or what.  But, he certainly does not seem to
                be totally aware of his surroundings, I guess.
9

10  RT, 3/27/06, p.6.

11         Despite defense counsel's concerns, the Court proceeded with the plea colloquy,

12  ultimately without success.  During the plea colloquy, Defendant asked how he would

13  withdraw from the plea.  RT, 3/27/06, p.19-20.  Defendant wanted to enter a plea of guilty

14  and withdraw from the same plea.  *Id.*  At that point, the Court determined that it would not

15  accept the plea of guilty.  RT, 3/27/06, p.24.

16         On May 15, 2006, a second attempt was made to have Defendant enter a guilty plea

17  pursuant to a written plea agreement.[4]  The hearing got off to a problematic start.  RT,

18  5/15/06, pp.4-13.  Defense counsel had found out just that morning that Defendant had

19  recently been released from the hospital after trying to harm himself.  RT, 5/15/06, p.4.

20  Defendant advised the Court he was hospitalized at Maricopa Medical Center for two and

21  a half days after swallowing three razor blades.  RT, 5/15/06, p.7.  He had been discharged

22  a week ago and remained on suicide watch until just prior to the hearing.  Id.  Defendant

23  believed he needed his medications increased.  RT, 5/15/06. p.8.  He reported that he heard

24  voices and saw people, deceased family members, in court that morning.  RT, 5/15/06, pp.8-

25  11, 13.

26         Despite these concerns, once again, the Court proceeded with the change of plea

27  _____

28         [3]Reporter's Transcript, 3/27/96. hereafter RT, 3/27/06.

           [4]Reporter' Transcript, May 15, 2006, hereafter RT, 5/15/06.

1  colloquy, and again, the Court was unsuccessful.  Defendant would not admit knowing that

2  illegal drugs were hidden in the truck he was driving when he was arrested.  RT, 5/15/06.

3  p.27-29.  Nonetheless, he maintained he was to paid $1,090,000 for driving the truck that

4  day. RT, 5/15/06, p.38.  For the second time, the Court rejected the change of plea to guilty.

5        At this point, Francisco's behavior in court and out of court raises substantial questions

6  concerning his competency.[5]  Moreover, Dr. Walden Weaver does not dispute Dr. Morenz'

7  opinion that Defendant is not presently competent to stand trial.  The Government has the

8  burden of proof, by a preponderance of the evidence, to establish that Defendant is competent

9  to stand trial.  *United States v. Frank*, 956 F.2d 872, 875 (9th Cir. 1991); *United States v.*

10  *Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991).  The Government cannot meet that burden at

11  this time.

12        It also must be determined if there is a substantial probability that Defendant can be

13  restored to competency.  Dr. Morenz believes that Francisco's treatment was optimal in

14  August 2006, when Dr. Morenz examined him.  Dr. Morenz does not believe that further

15  treatment is likely to restore competence.

16        Dr. Walden Weaver disagrees.  She believes restoring Defendant to his previous

17  medication protocol will once again be successful in restoring competence.  Her concern is

18  maintaining the medical protocol once the Defendant is returned to court.

19        Because of the success FMC-Butner had with the medical protocol that was

20  implemented in October 2005, this Court finds there is a substantial probability that the

21  Defendant can be restored to competence to proceed to trial with further treatment at FMC-

22  Butner.  Therefore, the Defendant should be ordered returned to the custody of the Attorney

23  General for further treatment.  In so doing, this Court should order that medical staff at CCA

24  immediately advise the United States Marshals Service and this Court of any change in

25  medications from those established by FMC-Butner at the time of Defendant's discharge.

26

27

28        [5]In hindsight, both attempted change of plea colloquies should have been discontinued immediately after the initial competency inquiry.  *United States v. Loyola-Dominguez*, 125 F.3d 1315, 1318 (9th Cir. 1997)(suicide attempt on eve of trial necessitating a competency hearing).

**IT IS, THEREFORE, THE REPORT AND RECOMMENDATION OF THIS COURT** that District Judge Collins, after his independent review and consideration, enter an order as follows:

1.   Defendant is not presently competent to stand trial and cannot rationally assist in his defense.

2.   There is a substantial probability that Defendant can be restored to competence with further treatment at FMC-Butner

3.   Pursuant to 18 U.S.C. §4241(d), that the defendant be committed to the custody of the Attorney General to be hospitalized at FMC-Butner for a reasonable period of time, **NOT TO EXCEED FOUR (4) MONTHS**, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the trial to proceed.

4.   That a **Status Conference** be set for **TUESDAY, JULY 31, 2007, AT 11:00 A.M., BEFORE U.S. MAGISTRATE JUDGE CHARLES R. PYLE,** Courtroom 5F, to consider the issue of restorability.

5.   Upon Defendant's return from FMC-Butner, the medical staff at CCA is ordered to immediately advise the United States Marshals Service, Assistant U.S. Attorney Joelyn D. Marlowe, Paul D. Bates, Esq., and U.S. Magistrate Judge Charles R. Pyle, of any change in the medications prescribed for the Defendant at the time of his discharge from FMC-Butner.

6.   That the Clerk of the Court shall deliver a certified copy of this Order to the United States Marshal Service and said copy shall serve as the commitment order for the defendant.

7.   That the Clerk of the Court shall further deliver copies of this Order to all counsel, as well as  the Federal Bureau of Prisons, Federal Medical Center, Attention: A.F. Beeler, Warden, in Butner, North Carolina, and the United States Marshals Service.

. . . . . . . . . . .

Pursuant to 28 U.S.C. § 636(b)(1)(B), the parties have ten (10) days from the date of

1    this Report and Recommendation to file written objections to these findings and

2    recommendations with the District Court.  Any objections filed should be filed as CR 05-

3    00521-TUC-RCC.

4           DATED this 24th day of January, 2007.

5

6

7

8                                                _____

9                                                **CHARLES R. PYLE**

10                                               **UNITED STATES MAGISTRATE JUDGE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28